NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

RODNEY PALACIO,

        Petitioner,

v.

PAUL SCHULTZ,

        Respondent.

Hon. Noel L. Hillman

Civil No. 07:0088 (NLH)

O P I N I O N

APPEARANCES:

    RODNEY PALACIO, #34551-083
    Bronx Community Corrections Center
    2534 Creston Avenue
    Bronx, New York  10468
    Petitioner Pro Se

    LOUIS J. BIZZARRI, Assistant U.S. Attorney
    CHRISTOPHER J. CHRISTIE, UNITED STATES ATTORNEY
    401 Market Street
    Camden, New Jersey  08101
    Attorneys for Respondent

HILLMAN, District Judge

    Rodney Palacio filed a Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 seeking restoration of good conduct time forfeited as a disciplinary sanction for escape from a community corrections center ("CCC"). Respondent filed an Answer arguing that the Petition should be dismissed, and Petitioner filed a Reply. For the reasons expressed below, the Court will dismiss the Petition with prejudice.

## I. BACKGROUND

Petitioner challenges a disciplinary sanction forfeiting earned good conduct time, imposed by the Bureau of Prisons ("BOP") for escape from a CCC. Petitioner argues that he did not commit the prohibited act of escape because he did not intend to fail to return to the CCC when he was arrested on August 28, 2006 on an outstanding 1996 warrant. The government argues that the Petition should be dismissed because the BOP has not issued a final decision, Petitioner received procedural due process, and there was some evidence to support the disciplinary finding of escape.

The material facts are not in dispute. On May 9, 2006, the BOP transferred Petitioner from FCI Fairton to the Bronx Community Corrections Center, pursuant to the Residential Drug Abuse Treatment Program. See 18 U.S.C. § 3621(b) and (e); 28 C.F.R. § 550.56. On August 28, 2006, Petitioner left the CCC at 9:00 a.m. and went to work. At approximately 7:15 p.m., a New York City police officer arrested Petitioner in Brooklyn, New York, based on an outstanding New York criminal bench warrant from 1996 for driving on a suspended license. Petitioner telephoned his employer who contacted a case manager at the CCC, and the case manager telephoned the arresting police officer at approximately 8:40 p.m. The arresting officer advised the case manager of the 1996 warrant. That same evening, the New York Police evidently released Petitioner, and he returned to the CCC by 11:50 p.m. However, Petitioner's authorization to leave the CCC for work required him to return by 9:00 p.m. Because Petitioner failed to return by 9:00 p.m., the CCC placed Petitioner as on technical escape status.

The next day, August 29, 2006, Petitioner appeared in court (with authorization from the CCC). He was charged with New York Administrative Code 10-125 (Consumption of Alcohol

2

in Public), and consented to an Adjournment in Contemplation of Dismissal. (The administrative charge was officially dismissed and sealed on February 28, 2007.) On August 30, 2006, Petitioner appeared (with authorization from the CCC) in the Criminal Supreme Court of the County of New York, which dismissed and sealed the 1996 charge of driving on a suspended license. Petitioner provided documentary proof of both dismissals to the CCC by August 30, 2006. Nevertheless, on August 31, 2006, the United States Marshal's Service arrived at the CCC and CCC officials served Petitioner with a disciplinary incident report for Code 200, Technical Escape. The Marshals then removed Petitioner from the CCC and placed him at the Metropolitan Detention Center.

On September 1, 2006, the shift supervisor of the CCC spoke to Petitioner about the incident and filed an Investigation Report with the BOP, concluding that Petitioner had committed a technical escape on August 28, 2006, by failing to return to the CCC before 9:00 p.m. On September 6, 2006, the CCC Disciplinary Committee conducted a disciplinary hearing on the Code 200, Escape. Petitioner was present and testified. On September 11, 2006, the CCC Disciplinary Committee issued a report finding that Petitioner had committed a technical escape and recommending sanctions consisting of return to a secure facility and loss of good conduct time. On September 11, 2006, the Disciplinary Hearing Officer ("DHO") ruled that Petitioner had committed two disciplinary code infractions: Code 200, Escape, and Code 222, Use of Intoxicant. The DHO sanctioned Petitioner with transfer to a secure facility, 14 days loss of good conduct time, and 60 days loss of non-vested good conduct time for Escape, and transfer to a secure facility, 7 days loss of good conduct time, and 30 days loss of non-vested good conduct time, for Use of Intoxicants.

Petitioner appealed to the BOP's Regional Director. On October 25, 2006, D. Scott Dodrill, Regional Director, upheld the Code 200 Escape finding, vacated the Code 222 finding, and remanded. Petitioner appealed Dodrill's decision to the BOP's Central Office. On January 24, 2007, Harrell Watts, Administrator of National Inmate Appeals, upheld the decision of the Regional Director.

An Amended Incident Report was issued on December 1, 2006, charging Petitioner with Codes 200 and 222. On December 6, 2006, the Unit Disciplinary Committee referred the Incident Report to the DHO. The DHO expunged the Code 222, and conducted a re-hearing on the Code 200. On December 18, 2006, the DHO found that Petitioner committed the Code 200 prohibited act of Technical Escape, and sanctioned him with transfer to a secure facility, 14 days loss of good conduct time, and forfeiture of 60 days non-vested good conduct time.

Petitioner filed his Petition while he was incarcerated in New Jersey.[1] The Clerk received it on January 8, 2007. Petitioner challenges the disciplinary finding that he committed Code 200, Technical Escape. Petitioner argues that BOP regulations require BOP officials to discover outstanding warrants prior to transferring an inmate to a CCC, which was not done in his case. Petitioner reasons that, had the BOP followed its regulations, he would have resolved the 1996 warrant before he was transferred to the CCC. He further argues that he was not guilty of escape because he did not intend to escape. Relying on United States v. Nix, 501 F. 2d 516, 519 (7th

---

[1] At some point, Petitioner was transferred from the Metropolitan Detention Center to FCI Fairton. On March 7, 2007, the Clerk received Petitioner's notice of change of address indicating that Petitioner has again been transferred to the Bronx Community Corrections Center in New York. According to the BOP, Petitioner will be released from custody on April 26, 2007.

Cir. 1974), Petitioner contends that "escape [is] a voluntary departure from custody with an intent to avoid confinement." Nix, 501 F. 2d at 519.

Respondent filed an Answer and copy of relevant documents on February 20, 2007. As previously stated, Respondent argues that the Petition should be dismissed because (1) Petitioner has not exhausted administrative remedies; (2) Petitioner received procedural due process under Wolff v. McDonnell, 418 U.S. 539 (1974); and (3) there was some evidence to support the disciplinary finding of escape, as required by Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445, 455-456 (1985) and Thompson v. Owens, 889 F.2d 500, 501 (3d Cir. 1989).[2] Petitioner filed a Reply to the Answer.

## II. DISCUSSION

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody" and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989). The federal habeas statute requires that the petitioner be in custody "under the conviction or sentence under attack at the time his petition is filed." Lee v. Stickman, 357 F.3d 338, 342 (3d Cir. 2004) (quoting Maleng, 490 U.S. at 490-91).

---

[2] This Court rejects Respondent's argument that Petitioner failed to exhaust the BOP's three-step Administrative Remedy Program, as Petitioner challenged the Code 200 finding before the Regional Director and the Central Inmate Appeals, both of which upheld the Code 200 sanction.

This Court has subject matter jurisdiction under § 2241 to consider the instant Petition because Petitioner challenges the loss of good conduct time on federal grounds, and he was incarcerated in New Jersey at the time he filed the Petition. See Preiser v. Rodriguez, 411 U.S. 475 (1973); Woodall v. Fed. Bureau of Prisons, 432 F.3d 235, 242-44 (3d Cir. 2005).

The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. A person is entitled to due process of law when government action deprives him or her of life, liberty or property. See Greenholtz v. Inmates of Nebraska Penal and Correctional Complex, 442 U.S. 1, 7 (1979). To analyze a due process claim, the first step is to decide whether the person was deprived of a liberty or property interest protected by due process. See Fuentes v. Shevin, 407 U.S. 67 (1972). Only if the answer is yes, is the second step, determining what process is due, necessary. See Morrissey v. Brewer, 408 U.S. 471 (1972).

Federal inmates possess a liberty interest in good conduct time. See Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974); Young v. Kann, 926 F. 2d 1396, 1399 (3d Cir. 1991); Levi v. Holt, 192 Fed. Appx. 158 (3d Cir. 2006). Where a prison disciplinary hearing results in the loss of good conduct time, due process requires: (1) 24 hours advance written notice of the disciplinary charges; (2) a hearing with the right to testify, call witnesses and present documentary evidence, when not unduly hazardous to correctional goals; and (3) a written statement by the factfinder as to the evidence relied on and reasons for the disciplinary action. See Wolff v. McDonnell, 418 U.S. 539, 564-566 (1974). Petitioner does not seriously dispute that he received due process in accordance with the requirements of Wolff and the record shows compliance with Wolff.

6

In addition to the requirements of Wolff, "revocation of good time does not comport with the minimum requirements of procedural due process unless the findings of the prison disciplinary [officer] are supported by some evidence in the record." Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445, 454 (1985) (citations and internal quotation marks omitted); see also Griffin v. Spratt, 969 F.2d 16, 19 (3d Cir. 1992); Thompson v. Owens, 889 F.2d 500, 501 (3d Cir. 1989). The Supreme Court explained the "some evidence" standard in this passage of Hill:

> Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary [officer].

Hill, 472 U.S. at 455-456; see also Thompson, 889 F.2d 500.

Petitioner's first argument is that he did not commit the prohibited act of Escape because the prohibited act requires an intent to be absent, and he had no intent to be absent from the CCC on August 28, 2006. Specifically, he argues:

> The evidence indicates that Petitioner was released to BCCC on May 9, 2006 with a 1996 outstanding active Criminal Court bench warrant, unbeknownst to petitioner, which was an oversight by F.C.I. Fairton for failing to run the required warrant check before sending petitioner to the CCC program. A direct violation of U.S. Department of Justice Program Statement 7310.04(f), which prohibits inmates with unresolved pending charges, that would likely lead to arrest, conviction or confinement to participate in CCC programs. The BCCC accepted Petitioner into the CCC program with this 1996 outstanding Criminal Court Bench Warrant .... Consequently as a result of this warrant Petitioner was arrested and taken into custody by the New York City Police Authorities for this warrant. Not New Conduct as explained in the BCCC handbook. The BCCC handbook on rules of technical escape, which Respondent contends proves I escaped, can only be

7

> defined and construed as "being arrested by Law Enforcement Authorities for new conduct only (not being arrested for a 1996 outstanding warrant). The reason for this Conclusion is because U.S. Department of Justice made ti perfectly clear in P.S. 7310.04(f) that any inmate with unresolved pending charges (warrant) or detainers that will likely lead to arrest conviction or confinement shall not ordinarily participate in the CCC program.
>
> Taking that into consideration, and conforming it with the BCCC Handbook Rule of Technical Escape, this Court can conclude that the BCCC Handbook was written with the understanding that the U.S. Department of Justice (P.S. 7310.04(f) did not want inmate with unresolved pending charges (warrants), which would likely lead to arrest, participating in the CCC programs. In essence, any other kind of arrest, pending charges, or detainers, would result in a direct violation of U.S. Department of Justice Program Statement 7310.04(f). The BCCC Handbook Rule on Escape addresses the unknown whereabouts of an escapee. In this case the BCCC was well informed of petitioner's whereabouts as petitioner returned to the BCCC with Court disposition of the warrant . . . . Finally, the facts conformed with the circumstances of this case clearly indicate that Petitioner did not escape or willfully violate the terms of his extended confinement, when he was arrested and taken in custody of the New York City Police Authorities for a 1996 outstanding criminal Court bench warrant.

(Petitioner's Reply at pp. 5-6.)

The BOP's interpretation of its own regulation is "controlling . . . unless it is plainly erroneous or inconsistent with the regulation." Chong v. Dist. Dir., I.N.S., 264 F. 3d 378, 389 (3d Cir. 2001). BOP regulations authorize the BOP to impose sanctions when an inmate "is found to have committed a prohibited act." 28 C.F.R. § 541.13(a). Prohibited acts under BOP regulations include Code 200, entitled "Escape from unescorted Community Programs and activities and Open Institutions (minimum) and from outside secure institutions - without violence." 28 C.F.R. § 541.13, Table 3. The BOP's Program Statement 7300.09, entitled

"Community Corrections Manual," defines escape from a CCC to include what happened to Petitioner. Specifically, the Program Statement defines Escape as follows:

> ESCAPE FROM CUSTODY - Under this category, report an inmate whose whereabouts are unknown after contract staff have tried to locate the inmate at local jails, hospitals, job, and pass locations.
>
> ESCAPE DUE TO COMMUNITY ARREST - Under this category, **report an inmate who is missing as a result of an arrest by a law enforcement authority. The CCM is aware of the inmate's location** and has initiated procedures to place a detainer in favor of the USMS . . . . In SENTRY these are identified as technical escapes . . . .
>
>> Community Arrest/New Criminal Behavior - An inmate is arrested for engaging in new criminal behavior since assignment to a community based program . . .
>>
>> **Community Arrest/Old Criminal Behavior - An inmate is arrested for criminal behavior that occurred prior to assignment to a community based program.** For example, the inmate is arrested by an officer who recognizes him as having a warrant pending since before this incarceration.

Community Corrections Manual, Program Statement 7300.09 § 5.6.2(a)(4) (emphasis added).

This definition is not plainly erroneous or inconsistent with BOP regulations, see Chong, 264 F. 3d at 389, and Petitioner's arrest on the basis of the 1996 arrest warrant falls squarely within the BOP's definition of "escape" from a CCC. See Community Corrections Manual, Program Statement 7300.09 § 5.6.2(a)(4). Under these circumstances, this Court rejects Petitioner's argument that Code 200 requires the intent to escape federal custody.

Petitioner nevertheless argues that federal courts have defined "escape from federal custody" as requiring proof that the defendant acted with the conscious objective of leaving

federal custody without authorization. However, the United States Supreme Court rejected this proposition in United States v. Bailey, 444 U.S. 394, 407 (1980). In Bailey, the Supreme Court determined that the prosecution fulfills its burden of proving a knowing violation of the escape statute, 18 U.S.C. § 751(a), "if it demonstrates that an escapee knew his actions would result in his leaving physical confinement without permission." Id. at 408.

In essence, Petitioner argues that he did not "escape" because he had no power to avoid being arrested, in light of the outstanding 1996 active warrant and the BOP's failure to discover the warrant before it transferred him to the CCC. The BOP's Program Statement clearly rejects such a defense. To rule in favor of Petitioner in this action, this Court would have to find that the BOP's failure to recognize a necessity defense violates federal law. "Like the defense of necessity, the defense of duress allows the defendant to avoid liability . . . because coercive conditions or necessity negates a conclusion of guilt even though the necessary *mens rea* was present." Dixon v. United States, 126 S. Ct. 2437, 2442 (2006) (citations and internal quotation marks omitted). The rationale of the defense is that, "even though he has done the act the crime requires and has the mental state which the crime requires, his conduct which violates the literal language of the criminal law is excused." Dixon, 126 S. Ct. at 2442 (quoting 2 LaFave § 9.7(a), at 72 (footnote omitted)).

However, the BOP's failure to recognize a necessity defense does not violate federal law. See United States v. Oakland Cannabis Buyers' Co-op, 532 U.S. 483, 490 (2001). In Oakland Cannabis Buyers' Co-op, the Supreme Court emphasized

> that it is an open question whether federal courts ever have
> authority to recognize a necessity defense not provided by statute.
> A necessity defense "traditionally covered the situation where

10

> physical forces beyond the actor's control rendered illegal conduct the lesser of two evils." United States v. Bailey, 444 U.S. 394, 410 (1980). Even at common law, the defense of necessity was somewhat controversial . . . . And under our constitutional system, in which federal crimes are defined by statute rather than by common law . . . , it is especially so. As we have stated: "Whether, as a policy matter, an exemption should be created is a question for legislative judgment, not judicial inference." United States v. Rutherford, 442 U.S. 544, 559 (1979). Nonetheless, we recognize that this Court has discussed the possibility of a necessity defense without altogether rejecting it. See, e.g., Bailey, supra, at 415.

United States v. Oakland Cannabis Buyers' Co-op, 532 U.S. 483, 490 (2001).

Given the Supreme Court's ruling that federal law does not require recognition of a necessity defense, the BOP's failure to recognize such a defense does not constitute a violation of federal law. Because the BOP satisfied the requirements of the Due Process Clause and did not otherwise violate federal law, this Court will not overturn the BOP's decision and will dismiss the Petition with prejudice.

### III. CONCLUSION

For the reasons set forth above, the Court dismisses the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2241 with prejudice.

_____
**NOEL L. HILLMAN, U.S.D.J.**

At Camden, New Jersey

Dated: _March 21_, 2007

11